THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAMIE SHANDRO KIESERMAN, M.D.,<br><br>Plaintiff,<br><br>v.<br><br>UNUM LIFE INSURANCE COMPANY OF AMERICA,<br><br>Defendant. | CASE NO. C21-0448-JCC<br><br>ORDER |

This matter comes before the Court on cross motions filed by Plaintiff Jamie Shandro Kieserman, M.D., ("Dr. Shandro") (Dkt. No. 12) and Defendant Unum Life Insurance Company of America ("Unum") (Dkt. No. 14) seeking a final judgment from this Court under Federal Rule of Civil Procedure 52. Such a motion is based on an administrative record ("AR") created in an underlying Employee Retirement Income Security Act ("ERISA") dispute. Having thoroughly considered the parties' briefing, the relevant record, and finding oral argument unnecessary, the Court hereby GRANTS Plaintiff's motion (Dkt. No. 12) and DENIES Defendant's motion (Dkt. No. 14) for the reasons explained herein.

I.   BACKGROUND

Plaintiff seeks a declaration of her right to long term disability ("LTD") benefits. (*See* Dkt. No. 1.) She is employed as an emergency physician at Harborview Medical Center and

associate professor of Emergency Medicine at the University of Washington. (Dkt. No. 14 at 1.) In 2018, she was diagnosed with Stage IV metastatic breast cancer, which metastasized to her liver and rib. (Dkt No. 12 at 4.) She went on full medical leave for a year, undergoing treatments including chemotherapy, a lumpectomy, hormone therapies, and a liver lesion ablation. (*Id.*) Plaintiff stated that after consulting her oncologist, Dr. Linden, who recommended a 50% schedule without night shifts, she returned to work on a reduced schedule in October 2019. (*Id.* at 4–5.)

### A. The Policy

At all relevant times, Plaintiff was insured through her employer under a long term disability ("LTD") plan. (Dkt. No. 12 at 3.) Unum funds and insures the plan's benefits through Policy No. 423840 ("the Policy"). (Dkt. No. 1 at 4.) A person is "disabled" under the Policy when due to "sickness or injury" she is either "unable to perform the material and substantial duties of [her] regular Occupation" or has a "20% or more loss in [her] indexed monthly earnings while working in [her] regular occupation." (Dkt. No. 12 at 3.) The Policy defines "regular occupation" as:

> [T]he occupation you are routinely performing when your disability begins. . . . For physicians, "regular occupation" means your specialty in the practice of medicine which you are routinely performing when your disability begins.

(Dkt. No. 14 at 3.) "Material and substantial" duties are those that "are normally required for the performance of your regular occupation; and cannot be reasonably omitted or modified." (*Id.*)

### B. Plaintiff's LTD Benefits Application

Unum found Plaintiff totally disabled as of October 8, 2018. (Dkt. No. 12 at 5.) After she returned to work in October 2019, Unum concluded she was "presently working to max capacity" and continued to pay benefits offset by her earnings. (*Id.*) In June 2020, Unum concluded it should determine "the occupational demands" of Plaintiff's work. (*Id.* at 6.) Unum's

vocational consultant identified the following job duties:

> Evaluates patients, performing examinations to determine medical problems, using physical findings, diagnostic images, laboratory test results, and patient's statements as diagnostic aids. Administers or prescribes treatments and drugs.

(*Id.*) Physical demands were found to be "[l]ight." (*Id.*) Relying on these findings, Unum Nurse Lynn Gorman concluded Plaintiff was "not functionally limited other than some fatigue" and "no clinical evidence" supported her work restrictions. (*Id.*)

On July 8, 2020, Unum's-site physician ("OSP") endorsed Nurse Gorman's opinion. (*Id.*) Dr. Linden disagreed when the OSP called her to outline his opinion. (*Id.*) On July 24, 2020, another OSP wrote a report concluding that there was no evidence precluding Plaintiff from full time "light work" as described in Nurse Gorman's list of "physical demands." (*Id.* at 7.) Unum's Designated Medical Officer agreed. (*Id.*) On July 31, 2020, Unum terminated Plaintiff's benefits, explaining:

> There is no evidence to currently preclude full-time work. . . . You have had no major side[] effects noted from your chemotherapy. Your main complaint has been fatigue, yet it is documented that you are very active personally. You are currently working 5 nine-hour shifts/week plus teaching. Your prior work involved 9 nine-hour shifts/week[1] and the same teaching. In addition, you were able to vacation in Europe skiing in the Alps with your family. . . . Dr Linden documented in your April 27, 2020 (most recent oncology note) that you were feeling well overall, exercising and doing sweaty Yoga. . . . Dr Linden gave a performance status of ECOG "ZERO" i.e. no restrictions and limitations at that time.

(*Id.* at 8.) Plaintiff appealed, including a declaration from Dr Linden, who opined:

> (1) [Dr. Shandro] does not have the capacity to perform the daunting and exhausting work of an Emergency Physician on a full-time basis due to her ongoing fatigue from having cancer, and undergoing treatment, currently with palbociclib and letrozole; (2) were she to work full-time, that would most likely cause yet more severe fatigue, resulting in the inability to work at all; (3) she is immuno-suppressed and more prone to infection due to her neutropenia and fatigue (from past and current therapy), and the further fatigue and stress that would result from additional work will only heighten her susceptibility to infection and illness; and (4) pushing herself beyond her capacity would hazard her health, putting her at heightened risk for not being able to adhere to the dose and dose density of the current therapy, which then puts her at risk for recurrence of the cancer. This is not a trivial risk, she had stage IV cancer with

---

[1] Plaintiff asserts that she works five nine-hour shifts per month, not per week. (Dkt No. 12 at 8)

biopsy proven liver and bone met[astisis].

(*Id.* at 8–9.) Dr. Linden disagreed with Unum's summary of Plaintiff's job duties and physical demands and noted the ECOG scale "was not designed or intended to determine vocational capacity." (*Id.* at 9.)

Plaintiff asserted that her 50% schedule allowed her to "be well rested and functioning at my best in order to be a safe and effective emergency physician." (*Id.* at 13.) She described the significant effects of her fatigue on her ability to meet the physical and cognitive demands of her work and day-to-day life. (*Id.*)

In response to her appeal, Unum's in-house doctor conducted a review. (*Id.*) His report concluded "the insured's reported inability to return to full-time work. . . appears to be related to her perceived risk of intolerance to full-time work and night shifts due to fatigue rather than actual demonstrated intolerance." (*Id.* at 14.) Dr. Linden responded that the work restrictions "are not based on Dr. Shandro's perception of risk. They are based on my experience, over 20 years of work in medical oncology." (*Id.*) Plaintiff objected to the characterization of her work as "light." (*Id.* at 16) On April 5, 2021, Unum denied Plaintiff's appeal. (*Id.*)

## II.    DISCUSSION

### A.    ERISA Standard of Review

ERISA allows a plan participant "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). District courts review a plan administrator's denial of benefits "under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). The parties agree that the Court should review Unum's benefits decision *de novo*. (Dkt. Nos. 12 at 16, 14 at 10 n. 3.)

Under *de novo* review, "'[t]he court simply proceeds to evaluate whether the plan administrator correctly or incorrectly denied benefits.'" *Opeta v. Nw. Airlines Pension Plan for*

*Cont. Emps.*, 484 F.3d 1211, 1217 (9th Cir. 2007) (quoting *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006)). The Court's review is limited to the evidence that was before the plan administrator except "when circumstances clearly establish that additional evidence is necessary to conduct an adequate *de novo* review." *Mongeluzo v. Baxter Travenol Long Term Disability Ben. Plan*, 46 F.3d 938, 943 (9th Cir. 1995).

The Court's *de novo* review "can best be understood as essentially a bench trial 'on the papers' with the District Court acting as the finder of fact." *Muller v. First Unum Life Ins. Co.*, 341 F.3d 119, 124 (2d Cir. 2003). When considering a Rule 52 motion for judgment, the court will ask "not whether there is a genuine issue of material fact, but instead whether [the claimant] is disabled within the terms of the policy." *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1094–95 (9th Cir. 1999). The court "can evaluate the persuasiveness of conflicting testimony and decide which is more likely true." *Id.* Thus, the court may make factual findings, evaluate credibility, and weigh the evidence before it to determine whether the administrator correctly or incorrectly denied benefits. *See Anderson v. Liberty Mut. Long Term Disability Plan*, 116 F. Supp. 3d 1228, 1231 (W.D. Wash. 2015). In evaluating the persuasiveness of each party's case, the court necessarily must make reasonable inferences where appropriate. *Oldoerp v. Wells Fargo & Co. Long Term Disability Plan*, 12 F. Supp. 3d 1237, 1251 (N.D. Cal. 2014). When conducting a *de novo* review of the record, the court does not give deference to the claim administrator's decision. *Muniz v. Amec Const. Mgmt., Inc.*, 623 F.3d 1290, 1295–96 (9th Cir. 2010).

A plaintiff challenging a benefits decision under 29 U.S.C. § 1132(a)(1)(B) bears the burden of proving entitlement to benefits by a preponderance of the evidence. *Id.* at 1294.

**B.   Benefits Determination**

After an "independent and thorough inspection" of the record and the benefits decision, the Court finds that Unum incorrectly denied LTD benefits. *Silver v. Executive Car Leasing Long-Term Disability Plan*, 466 F.3d 727, 728 (9th Cir.2006).

Dr. Linden and Unum's reviewing providers fundamentally disagree over whether Plaintiff's diagnosis and cancer treatments prevent her from working full time as an emergency physician and professor. Dr. Linden opines that prescription side effects and fatigue from cancer render Plaintiff incapable of full-time work, and that doing so would risk infection, illness, cancer recurrence, and possibly, her ability to work at all. (Dkt. No. 12 at 8–9.) Unum's reviewing providers counter that the record does not support limitations on full-time work, and that concerns regarding fatigue are speculative. (*See Id.* at 14 (discussing the "perceived risk of intolerance).)

The Court finds the reports of Unum's reviewing providers less persuasive than the conclusions and opinions of Plaintiff's treating oncologist. Unum's medical providers never examined Plaintiff in person. There is no "treating physician rule" in ERISA cases. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). But this does not preclude a district court, engaging in *de novo* review, from evaluating and giving appropriate weight to a treating physician's conclusions, where reliable and probative. *Reetz v. Hartford Life and Accident Ins. Co.*, 294 F. Supp. 3d 1068, 1083 (W.D. Wash. 2018). Here, not only was Dr. Linden able to personally observe Plaintiff's progression and credibility as her treating physician, but as her treating *oncologist*. Her declaration in support of Plaintiff's appeal outlines her many qualifications, including her board certification in medical oncology and her position as Associate Program Director of the Medical Oncology and Hematology Fellowship Program at Fred Hutchinson Cancer Research Center and UW Medicine. (AR 1229.) Her specialty, experience, and her relationship with the Plaintiff over the duration of treatment lend additional credibility to her conclusions. *See Oldoerp*, 12 F. Supp. 3d at 1250 ("[W]hen an in-person medical examination credibly contradicts a paper-only review conducted by a professional who has never examined the claimant, the in-person review may render more credible conclusions."). In contrast, Unum's reviewing providers did not examine Plaintiff, had minimal contact with Plaintiff's treating physicians, and the record does not indicate any special training in oncology.

Likewise, the Court finds Dr. Linden and Plaintiff's assessments of her job tasks and

physical demands more compelling than the lists provided by Unum's vocational consultant. While the job certainly involves typing, walking, and lifting occasional weight, such descriptions fail to account for the obvious cognitive and physical demands of work as an emergency physician. Indeed, the progress notes convey concern over "UW emotional and physical stress of working" prior to her return to work. (Dkt. No. 14 at 4.) Unum's argument that the record does not evidence an inability to work full time at such a highly demanding job is unpersuasive. As discussed, the record contains a serious cancer diagnosis, cancer treatment drugs known to cause fatigue and compromised immunity, low or borderline white blood cell counts, and the assertions of both Plaintiff and her treating oncologist that they discussed her fatigue's interference with work.

Unum also claims the restriction to a 50% schedule was an "after the fact" opinion that should be given little weight. (*Id.* at 5.) Unum argues Dr. Linden's "progress notes contain no reference whatsoever to any discussion between Plaintiff and Dr. Linden regarding full-time work, even on a trial basis." (*Id.*) Further, it notes that on an October 2019 health care provider form Dr. Linden "checked a box indicating that Plaintiff "CAN now perform all the duties of the CURRENT job with proposed modifications" with no mention of part time work. (*Id.*) And, Unum claims that Dr. Linden's response to Unum's termination of benefits is the first document where Dr. Linden states that Plaintiff can work only a 50% schedule. Plaintiff says this summary is misleading. (Dkt. No. 20 at 4.) The Court agrees.

The primary function of medical records is to promote communication and recordkeeping for health care personnel—not to provide evidence for disability determinations. *Orn v. Astrue*, 495 F.3d 625, 634 (9th Cir. 2007). We therefore need not find the modification mentioned in every progress note or report. When viewed in its entirety, the record supports finding the work restriction was not put in place or fabricated after Plaintiff's LTD benefits were terminated. Around the same time as October 2019 health care provider form, Dr. Linden filled out another such form where she checked a box indicating Plaintiff could work "part time" until "6/30/20."

ORDER
C21-0448-JCC
PAGE - 7

(Dkt. No. 14 at 5.) Unum itself concluded in October 2019 after Plaintiff returned to a reduced schedule that she was "presently working to max capacity," and it continued to pay benefits offset by her earnings. (Dkt. No. 12 at 5.) Her chart notes from December 2019 onward note Plaintiff was working at 50%. (Dkt. No. 20 at 4.) It was not until June 2020, near the date Dr. Linden had marked on the form indicating a part-time work restriction, that Unum began scrutinizing Plaintiff's benefits. (Dkt. No. 12 at 6.) When Unum contacted Dr. Linden before terminating the benefits, she indicated Plaintiff could not increase her work hours. (*Id.*) Dr. Linden asserts, consistent with this record, that she discussed the 50% work schedule during her consultation about Plaintiff's return to work. (*Id.* at 3.) The Court has no reason to doubt her veracity.[2]

Unum stresses the lack of evidence that Plaintiff "tried and failed one or more attempts of full-time work," which its reviewing doctor said "would be expected prior to concluding that fatigue would limit full-time work." (Dkt. No. 14 at 9.) Unum provides no authority from the Policy or case law requiring Plaintiff to attempt to work full time before a treating oncologist could sufficiently determine that her cancer and treatments prevented her from safely doing so. Dr. Linden expressly considered this, concluding "I have sufficient confidence in my clinical judgment that I do not find it necessary to subject Dr. Shandro to a 'trial of full-time work and/or a trial of night shift work,' as Dr. Norris proposes. *Primum non nocere*." (Dkt. No. 12 at 15.) The Court agrees.

Finally, Unum devotes much of its briefing to describing Plaintiff's ability to exercise and recreational vacations she took during the coverage period. (*See* Dkt Nos. 14 at 2, 3, 4, 9, 14, 15; 21 at 2, 3, 5, 8.) This focus is misplaced. As Plaintiff argues, she was advised by her treating

---

[2] Unum asserts in its motion that Plaintiff is working "90% or more of the hours she worked previously, but has replaced one day of clinical work per week with one day of teaching work." This assumes that Plaintiff works 8 hours on each of her teaching days. (Dkt. No. 14 at 6 n.1.) Plaintiff states that this calculation is incorrect and points out that Unum never raised this argument when terminating her benefits, nor is it contained within the record. (Dkt. No. 20 at 3.) As it was never previously disputed that Plaintiff was actually working at 50%, the Court declines to consider this new argument based upon assumptions outside of the record.

physician to exercise in order to achieve optimal treatment outcomes, and most of the travel Unum mentions occurred before she began her current medications or returned to work. (Dkt. No. 12 at 9–10.) In any case, that Plaintiff is able to exercise, enjoys vacations with her family, and was able to return to work part-time in no way invalidates her claim—the Policy did not require her to be fully disabled, but "disabled" as defined in specific terms. Dr. Linden notes that while she advises all patients to exercise,

> I reduced Dr. Shandro's Palbociclib dosage from 125mg to 100 mg because her white blood cell count had become dangerously low. We can see from the regular diagnostic testing that Dr. Shandro's blood counts are all borderline. This does not mean she cannot exercise. It means that when she exercises or works, she will be more tired than if her counts were normal. . . . The fatigue of continuous treatment is real, and merits activity titration.

(*Id.* at 15.) Despite her recreational activity, the record as a whole supports a finding that Dr. Shandro is "unable to perform the material and substantial duties of her regular Occupation." (Dkt. No. 12 at 3.)

Plaintiff has a diagnosis of Stage IV breast cancer, which carries a 27% five-year survival rate. (Dkt. No. 20 at 2.) The record contains objective information about that diagnosis, as well as the known side effects of medications she is undisputedly taking (including fatigue and immunosuppression) that support her oncologist's opinions. She and her oncologist agreed that limiting her work hours was necessary for her to safely return to work. Plaintiff adequately established that she could not safely perform the high-level cognitive, emotional, and physical tasks normally required for a full-time emergency physician and associate professor of emergency medicine. Accordingly, the court is persuaded that Plaintiff, more likely than not, is disabled under the LTD plan's terms and is therefore entitled to additional benefits under the Policy.

I.   **CONCLUSION**

For the foregoing reasons, the Court FINDS that Plaintiff is disabled as that term is defined in the Policy administered by Unum. Accordingly, Plaintiff's motion (Dkt. No. 12) is GRANTED and Defendant's motion is DENIED (Dkt. No. 14). The Clerk of Court is

DIRECTED to enter judgment in favor of Plaintiff and against Defendant.

DATED this 6th day of December 2021.

*John C. Coughenour*
John C. Coughenour
UNITED STATES DISTRICT JUDGE